IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                            :
CLARENCE WILLOUGHBY                         :      3:10 CV 509 (JGM)
                                            :
v.                                          :
                                            :
JOANNE PETERSON, LISA DADDIO,               :      DATE: AUGUST 27, 2012
FRANCISCO ORTIZ, RACHEL ROSS,[1]            :
AND CITY OF NEW HAVEN                        :
-------------------------------------------------x
```

RULING ON MOTIONS FOR SUMMARY JUDGMENT

On April 6, 2010, plaintiff Clarence Willoughby, a former detective with the City of New Haven Police Department ["NHPD"], commenced this action against the City of New Haven and defendants Joann Peterson, a Captain of the NHPD, Lisa Dadio, a former Lieutenant of the NHPD, Francisco Ortiz, the former Chief of Police of the NHPD, and Rachael Ross, a Sergeant of the NHPD assigned to the Internal Affairs unit, individually and in their official capacities (Dkt. #1).[2] On November 18, 2010, plaintiff filed his First Amended Complaint in which he alleges that defendants acted individually and in concert to bring criminal charges against plaintiff for making a false statement, for forgery and for larceny, which charges resulted in plaintiff's arrest and trial by jury, at the conclusion of which plaintiff

---

[1]Defendant Ross' first name is spelled "Racheal," and now she is known as "Racheal Cain"; however, the Court will refer to her as defendant Ross throughout this Ruling. (Dkt. #103, Exh. B; Dkt. #106, Exh.1). Defendant Peterson's first name is "Joann," not "Joanne," and defendant Daddio's last name is spelled "Dadio." (Dkt. #103, Exhs. A & C; Dkt. #106, Exhs. 2-3).

[2]On November 9, 2010, defendants filed their Motion to Dismiss the complaint in their official capacities (Dkts. ##31-32), which U.S. District Judge Janet Bond Arterton granted in part and denied in part on February 28, 2010, such that plaintiff's Monell claims under 42 U.S.C. § 1983 against defendants in their official capacities and the City of New Haven were dismissed, and plaintiff's state law claims against the City of New Haven and the individual defendants in their official capacity remain. (Dkt. #43; see also Dkts. ##39, 41, 42, 44).

was acquitted of all criminal charges.[3]   (Dkt. #34).   Specifically, plaintiff asserts that defendants' actions constituted a false arrest under 42 U.S.C. § 1983 (Count One), wrongful detention under 42 U.S.C. § 1983 (Count Two), negligent supervision under 42 U.S.C. § 1983 (Count Three), malicious prosecution (Count Four), false arrest and imprisonment (Count Five), negligence (Count Six), and defamation (Count Seven).  (Id.).  On December 6, 2010, defendants, in their individual capacities, filed their Answer (Dkt. #36).[4]

On April 11, 2011, the parties consented to trial before this Magistrate Judge (Dkt. #55; see also Dkts. ##25, 28, 30), and on June 7, 2012, defendants, in their official capacities, filed the pending Motion for Summary Judgment with Rule 56(a)1 Statement, affidavits, exhibits, and brief in support.  (Dkts. ##102-04).[5]  On the same day, defendants,

_____

[3]Specifically, plaintiff was charged with False Statement in the 2nd Degree under CONN. GEN. STAT. § 53a-139; Forgery in the 2nd Degree under CONN. GEN. STAT. § 53a-123; and Larceny in the 2nd Degree under CONN. GEN. STAT. § 53a-123.  (Id., ¶ 13).

[4]Plaintiff suffered an cerebral aneurysm rendering him incompetent shortly after the filing of this lawsuit.  (See Dkt. #20).  On August 16, 2010, plaintiff's daughter, who was the appointed conservator, was substituted as the party plaintiff until November 28, 2011 when plaintiff was reinstated as the plaintiff in this action, the conservatorship having closed in April 2011.  (Dkts. ##23, 62, 83-84).

[5]Attached to defendants' brief in support (Dkt. #103) are the following twenty-five exhibits: affidavit of Lisa Dadio, sworn to May 29, 2012 ["Dadio Aff't"](Exh. A); affidavit of Racheal Cain, formerly known as Racheal Ross, also sworn to May 29, 2012 ["Ross Aff't"](Exh. B); affidavit of Joann Peterson, sworn to June 6, 2012 ["Peterson Aff't"](Exh. C); affidavit of Francisco Ortiz, sworn to June 5, 2012 ["Ortiz Aff't"](Exh. D); copies of Information and Application for Arrest Warrant, dated February 6, 2008 (Exhs. E-H); copy of Case Preparation Expenditures, dated February 5, 2007 (Exh. I); copy of Informant Payment Request in the amount of $1500, approved February 6, 2007 (Exh. J); copy of Narcotic Enforcement Unit C.I. Payment Receipt in the amount of $1500, approved March 22, 2007 (Exh. K); copies of Information and Application for Arrest Warrant, dated January 30, 2007 (Exh. L); copy of Case Preparation Expenditures, dated November 7, 2006, in the amount of $1000 (Exh. M); copy of Informant Payment Request, in the amount of $1000, approved November 7, 2006 (Exh. N); copy of Narcotic Enforcement Unit C.I. Payment Receipt, in the amount of $1000, approved November 7, 2006 (Exh. O); copy of Case Preparation Expenditures, dated July 26, 2006, in the amount of $500 (Exh. P); copy of Informant Payment Request, in the amount of $500, approved July 26, 2006 (Exh. Q); copy of Narcotic Enforcement Unit C.I. Payment Receipt, in the amount of $500, dated July 26, 2006 (Exh. R); copy of Case Preparation Expenditures, dated July 20, 2004, in the amount of $1500 (Exh. S); copy of Informant Payment Request in the amount of $1500, approved July 20, 2004 (Exh. T); copy of

in their individual capacities, also filed their Motion for Summary Judgment with Rule 56(a)1 Statement, affidavits, exhibits, and brief in support. (Dkts. ##105-07).[6] On June 29, 2012, plaintiff filed his brief in opposition, along with his Local Rule 56(a)2 Statement. (Dkt. #108).[7]

For the reasons stated below, the Motion for Summary Judgment filed by defendants in their official capacities and the Motion for Summary Judgment filed in their individual capacities  (Dkts. ##102 and 105) are <u>granted</u>.

---

Informant Payment Request in the amount of $300, approved July 20, 2004 (Exh. U); copy of Case Preparation Expenditures, dated July 20, 2004, in the amount of $300 (Exh. V); copy of Case Preparation Expenditures, dated July 20, 2004, in the amount of $500 (Exh. W); copy of Informant Payment Request, in the amount of $500, approved July 20, 2004 (Exh. X); and copy of Case Incident Report taken by plaintiff, dated July 19, 2004 (Exh. Y).

[6]Attached to defendants' Local 56(a)1 Statement (Dkt. #106) are the following fifteen exhibits: another copy of the Ross Aff't (Exh. 1); another copy of the Peterson Aff't (Exh. 2); another copy of the Dadio Aff't (Exh. 3); another copy of the Ortiz Aff't (Exh. 4); copy of excerpts of plaintiff's deposition transcript, taken on April 11, 2012 ["Plaintiff's Depo."](Exh. 5); redacted copy of Application for Arrest Warrant, dated January 30, 2007 (Exh. 6); additional copies of Informant Payment Request and expenditure documents, dated February 5-6 and March 22, 2007 (Exh. 7); additional copies of Informant Payment Requests, dated July 20, 2004, in the amount of $1500, $500 and $300 (Exh. 8); additional copy of Informant Payment Request, dated July 26, 2004, in the amount of $500 (Exh. 9); additional copy of Informant Payment Request, dated November 7, 2006, in the amount of $1,000 (Exh. 10); additional copy of redacted Internal Affairs 164-07-I investigation report, dated January 7, 2008 (Exh. 11); and additional copies of Information and Application for Arrest Warrant, dated February 6, 2008 (Exhs. 12-15).

In a limited number of instances, the parties made reference to pages of plaintiff's deposition that were not attached to their filings.  This Ruling will not reference any deposition page that was not filed with the Court.

[7]Attached to plaintiff's brief in opposition is another copy of excerpts from Plaintiff's Depo. <u>See</u> note 6 <u>supra</u>.

I. FACTUAL BACKGROUND[8]

A. BENNETT HOMICIDE CASE

On November 27, 2006, Robert Bennett was shot to death.  (Indiv. Cap. Defs. Stmt ¶ 1; Official Cap. Defs. Stmt ¶ 10; Plaintiff's Stmt ¶¶ A.1, B.10; Ross Aff't ¶ 8).  The Bennett homicide case was assigned Case Number 06-66928 by the NHPD, and at some point, plaintiff, then a detective with the NHPD, was assigned as the lead investigator for this homicide case. (Indiv. Cap. Defs. Stmt ¶ 2; Official Cap. Defs. Stmt ¶¶ 9-10; Plaintiff's Stmt ¶¶ A.2, B.9-10; Ross Aff't ¶ 8; Peterson Aff't ¶ 8; Ortiz Aff't ¶ 12).  Errie McClendon was arrested for this homicide pursuant to an arrest warrant prepared by plaintiff.  (Indiv. Cap. Defs. Stmt ¶ 4; Plaintiff's Stmt ¶ A.4; Dadio Aff't ¶ 8; Exh. L; Exh. 6).

On or about April 1, 2007, defendant Dadio was transferred to the Investigative Services Unit ["ISU"] of the NHPD, where she was second in command of this unit.  (Indiv. Cap. Defs. Stmt ¶ 3; Plaintiff's Stmt ¶ A.3; Dadio Aff't ¶ 7).  Shortly after her transfer, she and representatives of the Office of the State's Attorney had discussions about problems that had arisen with the State's prosecution of the Bennett homicide.  (Indiv. Cap. Defs. Stmt ¶ 5; Plaintiff's Depo. at 89-91 (Dadio contacted the Office of the State's Attorney, not the other way around); see Official Cap. Defs. Stmt ¶ 5; Plaintiff's Stmt ¶ A.5, B.5).  Plaintiff was aware that the Office of the State's Attorney was concerned about plaintiff's investigation of the Bennett homicide case, and that they had questions about his investigation.  (Indiv. Cap. Defs. Stmt ¶ 6; Plaintiff's Stmt ¶ A.6; see Plaintiff's Depo. at 92).

In June 2007, defendant Dadio discovered in the files maintained at ISU, a

---

[8]The following factual background is taken from the Local Rule 56(a)1 Statement of the defendants in their official capacities ["Official Cap. Defs. Stmt"](Dkt. #104); the Local Rule 56(a)1 Statement of the defendants in their individual capacities ["Indiv. Cap. Defs. Stmt"](Dkt. #106); and plaintiff's Local Rule 56(a)2 Statement ["Plaintiff's Stmt"](Dkt. #108).

confidential informant packet for the Bennett homicide case, in which plaintiff had requested, and received, $1500 to pay a confidential informant identified as 01-02 ["CI-01-02"].  (Indiv. Cap. Defs. Stmt ¶ 7; Official Cap. Defs Stmt ¶ 11; Plaintiff's Stmt ¶¶  A.7, B.11; Dadio Aff't ¶ 10).  It was soon revealed that on or about February 5, 2007, plaintiff drafted and signed an Informant Payment Request form for CI-01-02, to be paid $1500 for information "regarding the names of the person(s) responsible for the homicide of Robert Bennett." (Official Cap. Defs Stmt ¶ 11; Plaintiff's Stmt ¶ B.11; Dadio Aff't ¶ 10; Peterson Aff't ¶ 12; Exhs. I-K).

However, before an individual can receive money from the NHPD as a "confidential informant," that individual has to be registered as a confidential informant with the NHPD, which registration cannot be done until such individual has gone through a screening process by the Department. (Indiv. Cap. Defs Stmt ¶ 8; Official Cap. Defs. Stmt ¶¶ 1-2; Plaintiff's Stmt ¶¶ A.8, B.1-2; Dadio Aff't ¶ 11).[9]  Plaintiff never mentioned either in the reports he had prepared for the Bennett homicide case, or in his arrest warrant affidavit for the Bennett homicide, that he had obtained information from a confidential informant during the course of his investigation. (Indiv. Defs. Stmt ¶ 10; see also id. ¶ 25; Official Cap. Defs. Stmt ¶ 14; Plaintiff's Stmt ¶¶ A.10, B.14; Dadio Aff't ¶ 13; Ross Aff't ¶ 10; Peterson Aff't ¶ 13; Exh. L;

---

[9]Plaintiff disputes that New Haven police officers are trained that if the information is received during the course of an investigation from a confidential informant to whom funds have been paid, that fact that a confidential informant has been used by an investigating officer should be noted in his or her police report, and if an arrest warrant is prepared that is based on information obtained from a paid confidential informant, this fact should be included in the arrest warrant affidavit as it could be an issue of exculpatory information.  (Compare Indiv. Cap. Defs. Stmt ¶ 9; Official Cap. Defs. Stmt ¶ 3; Plaintiff Stmt ¶¶ A.9, B.3; Dadio Aff't ¶ 12; Ortiz Aff't ¶ 14; with Plaintiff's Depo. at 11)("I was in the habit of not putting confidential information in the reports and stuff like that.").

Exh. 6).[10]   However, plaintiff did mention that he had received information from a concerned

citizen.   (Indiv. Cap. Defs. Stmt ¶ 11; Plaintiff's Stmt ¶ A.11; Dadio Aff't ¶ 13; Exh. L; Exh.

6).

    B. INTERNAL INVESTIGATION

    On December 20, 2007, defendant Francisco Ortiz, then Chief of the NHPD, ordered

the Internal Values and Ethics unit ["IV&E"] to commence an internal investigation into the

Bennett homicide. (Official Cap. Defs Stmt ¶ 4; Plaintiff's Stmt ¶ B.4; Ross Aff't ¶ 8; Peterson

Aff't ¶ 8; Ortiz Aff't ¶ 15). Defendant Peterson, a Captain in charge of the IV&E unit, and

defendant Ross, a Sergeant, conducted the internal affairs investigation. (Official Cap. Defs.

Stmt ¶ 7; Plaintiff's Stmt ¶ B.7; Ross Aff't ¶ 7; Peterson Aff't ¶¶ 7, 9; Ortiz Aff't ¶ 15).

    The investigation commenced by looking into the use of CI-01-02 in the Bennett

homicide investigation, and then grew to include investigating the use of CI-01-02 in three

additional homicide investigations: the homicide of Herbert Fields, the homicide of Domingo

Rodriguez, and the "Hill Shooting Spree." (Official Cap. Defs. Stmt ¶ 8; Plaintiff's Stmt ¶ B.8;

Ross Aff't ¶ 12; Peterson Aff't ¶ 14). The scope of the internal investigation of plaintiff thus

widened to include misappropriation of state funds as additional facts became known.

(Official Cap. Defs. Stmt ¶ 6; Plaintiff's Stmt ¶ B.6; Ross Aff't ¶ 9; Peterson Aff't ¶ 10).

------

    [10]Plaintiff's Local Rule 56(a)2 Statement in response to the individual capacity defendants' Statement is incomplete and misnumbered, as it contains admissions and denials for paragraphs 1-13, and denials for paragraphs 17, 18, 27, 29, 33, 35, 40, and 45, skipping paragraphs 14-16, 19-26, 28, 30-32, 34, 36-39, 41-44, and 46-61. (Plaintiff's Stmt at 2).

    Similarly, plaintiff's Local Rule 56(a)2 Statement in response to the official capacity defendants is incomplete and misnumbered, as it contains admissions and denial for paragraphs 1-13, and denials for paragraphs 23, 36-37, 39, and 45, skipping paragraphs 14-22, 24-35, 38, 40-44, and 46-53. (Plaintiff's Stmt at 3).

    In the absence of responses for such a significant number of paragraphs, the Court will assume that plaintiff has admitted these paragraphs.

According to defendants' Statements,[11] the investigation revealed payments in 2004, 2006 and 2007. Defendants discovered that on July 20, 2004, pursuant to the investigation of the "Hill Shooting Spree[,]" in which five shootings took place on July 11-12, 2004, three Informant Payment Request forms and three Case Preparation Expenditure Forms had been submitted; each of the forms contained plaintiff's signature and requested $1500 to be paid to CI-01-02, $300 to be paid to CI-01-07, and $500 to be paid to CI-01-019.  (Official Cap. Defs. Stmt ¶¶ 27, 36-42; Exhs. S-X; Exh. 8).[12]  Defendants also uncovered that during July 2006, in connection with the Rodriguez homicide investigation, plaintiff requested a $500 payment for CI-01-02, stating that, "Individual provided this Detective with information regarding the names of the person(s) responsible for the homicide of Domingo Rodriguez." (Official Cap. Defs. Stmt ¶¶ 24-25; Exh. 9; Ross Aff't ¶ 12; Peterson Aff't ¶ 29; Exhs. Q-R). Defendants similarly learned that on or about November 7, 2006, with respect to the Fields homicide investigation, which homicide occurred on August 1, 2006, an Informant Payment Request form was submitted for $1000 with plaintiff's signature, allegedly to pay CI-01-02 for "information regarding the names of the person(s) responsible for the homicide of Herbert Fields." (Official Cap. Defs. Stmt ¶¶ 15, 18-19; Peterson Aff't ¶ 26; Exhs. M-O; Exh. 10).  Finally, defendants found that on or about February 5, 2007, regarding the Bennett homicide investigation, an Informant Payment Request form for $1500 for CI-01-02 was submitted by plaintiff pertaining to information "regarding the names of the person(s) responsible for the homicide of Robert Bennett." (Official Cap. Defs. Stmt ¶¶ 11-12; Plaintiffs's Stmt ¶¶ B.11-12; Dadio Aff't ¶ 10; Peterson Aff't ¶ 12; Exhs. I-K; Exh. 7).

_____

[11]See note 10 supra.

[12]Plaintiff denies his involvement with these payments.  (Plaintiff's Stmt ¶¶ B.36-37; Plaintiff's Depo. at 67-69).

As part of the internal investigation, on January 16, 26, and 28, 2008, defendants Peterson and Ross met with CI-01-02, CI-01-07, and CI-01-019. (Indiv. Cap. Defs. Stmt ¶¶ 28-29, 32-35;[13] Official Cap. Defs. Stmt ¶¶ 45-47;[14] Ross Aff't ¶¶ 12(a), 13, 16-19; Peterson Aff't ¶¶ 15-16, 19-22).  Each confidential informant averred that he or she had never given any information to New Haven Police pertaining to homicide or shooting investigations; they knew nothing about the Bennett homicide, the Rodriguez homicide, the Fields homicide, or the Hill Shooting Spree; they did not receive any money from any police officer or detective in New Haven for any of these cases; the signature on each of the Informant Payment Receipts was not their signature;[15] and that they never received the money listed on the receipts. (Indiv. Cap. Defs. Stmt ¶¶ 29, 32-33, 35; Official Cap. Defs. Stmt ¶¶ 45-47; Ross Aff't ¶¶ 13, 17, 19; Peterson Aff't ¶¶ 16, 20, 22).

In addition, on December 26, 2007, defendants Ross and Peterson interviewed retired NHPD Detective Michael Quinn, who had been the lead detective assigned to investigate the Hill Shooting Spree and the Field homicide; Quinn did not recall having been informed that a CI was being utilized to the Hill Shooting Spree, he was unaware of plaintiff having submitted forms for CI payments for this investigation, and plaintiff failed to file any type of investigative report for the Field homicide investigation that would have documented his use

---

[13]Plaintiff denies paragraphs 29, 33, and 35, regarding all three meetings, in that he testified at his deposition that the CI's were not credible during their interviews, including that one was "under heavy medication[]" and another was not the right person.  (Plaintiff's Stmt ¶¶ A.29, A.33, A.35; Plaintiff's Depo. at 26-29, 43-49, 64-65).

[14]Plaintiff similarly denies paragraph 45, regarding the January 16, 2008 meeting with CI-01-02.  (Plaintiff's Stmt ¶ B.45; Plaintiff's Depo. at 62, 64-65).  See note 13 supra.

[15]A comparison was made between known examples of CI-01-02's signature and the signatures on the confidential informant payment receipts submitted by plaintiff; the signatures did not match.  (Indiv. Cap. Defs. Stmt ¶ 30; Ross Aff't ¶ 14; Peterson Aff't ¶ 17).

of a CI.  (Indiv. Cap. Defs. Stmt ¶¶ 36-39; Official Cap. Defs. Stmt ¶¶ 16-17, 20, 34-35, 43–44; Ross Aff't ¶¶ 20-24; Peterson Aff't ¶¶ 23-26).

Defendants also interviewed retired NHPD Detective Martin Dadio, who had been in charge of the investigation of the Rodriguez homicide; he likewise was unaware of any confidential informant having been utilized in that case and plaintiff similarly failed to file any type of investigative report for the Field homicide investigation that would have documented his use of a CI.  (Indiv. Cap. Defs. Stmt ¶¶ 40-42;[16] Official Cap. Defs. Stmt ¶¶ 22, 26; Ross Aff't ¶¶ 25-27; Peterson Aff't ¶¶ 27-29).   Lastly, plaintiff's investigation report and arrest warrant for the Bennett homicide did not mention the use of a confidential informant in that investigation.  (Indiv. Cap. Defs. Stmt ¶ 44; Official Cap. Defs. Stmt ¶ 14; Dadio Aff't ¶ 13; Ross Aff't ¶¶ 10, 29; Peterson Aff't ¶¶ 13, 31; Exh. L; Exh. 6).

On February 6, 2008, based upon the information known to defendant Ross as a result of the internal investigation, she prepared four affidavits in support of arrest warrants for the arrest and prosecution of plaintiff Willoughby. (Official Cap. Defs. Statement ¶¶ 48-52; Indiv. Cap. Defs. Stmt ¶ 47; Ross Aff't ¶ 32; Peterson Aff't ¶ 34; Exhs. E-H; Exhs. 12-15).   All four arrest warrants were signed by a Connecticut Superior Court Judge on February 6, 2008. (Official Cap. Defs. Stmt ¶ 53; Indiv. Cap. Defs. Stmt ¶ 48; Ross Aff't ¶ 33; Peterson Aff't ¶ 35; Exhs. E-H; Exhs. 12-15).[17]

---

[16]Plaintiff denies paragraph 40, for reasons not relevant to these pending motions. (Plaintiff's Stmt ¶ A.40; Plaintiff's Depo. at 57-60).

[17]The first arrest warrant application for Case Number 08-5732 focused on the investigation into the use of CI funds in the Bennett homicide investigation and sought three charges: false statement in the second degree, forgery in the second degree, and larceny in the second degree. (Official Cap. Defs. Stmt ¶ 49; Ross Aff't ¶ 32; Exh. E; Exh. 12).  The second arrest warrant application for Case Number 08-5733 focused on the investigation into the use of CI funds in the Fields homicide investigation and sought two charges: forgery in the second degree and larceny in the second degree. (Official Cap. Defs. Stmt ¶ 50; Ross Aff't ¶ 32; Exh. F; Exh. 13).

## II. DISCUSSION

The standard for summary judgment is well established.  The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Upon motion, following adequate time for discovery, Rule 56(c) requires that summary judgment be entered against a party:

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." FED. R. CIV. P. 56(c).  "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970), quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  "If reasonable minds could differ as to the import

---

The third arrest warrant application for Case Number 08-5734 focused on the investigation into the use of CI funds in the Rodriguez homicide investigation and sought three charges: false statement in the second degree, forgery in the second degree and larceny in the second degree. (Official Cap. Defs. Stmt ¶ 51; Ross Aff't ¶ 32; Exh. G; Exh. 14).

The fourth arrest warrant application for Case Number 08-5735 focused on the investigation into the use of CI funds in the "Hill Shooting Spree" investigation and sought two charges: forgery in the second degree and larceny in the second degree.  (Official Cap. Defs. Stmt ¶ 52; Ross Aff't ¶ 32; Exh. H; Exh 15).

of the evidence, . . . the moving party simply cannot obtain summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)(citations & internal quotation marks omitted).  Thus, the party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact." Adickes, 398 U.S. at 153.

A. PROBABLE CAUSE/FALSE ARREST

In Count One of plaintiff's Amended Complaint, he asserts a claim under 42 U.S.C. § 1983 for false arrest and malicious prosecution on grounds that defendants lacked probable cause to arrest plaintiff.  Section 1983 provides that any person who, acting under color of law, "subjects or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States shall be liable to the injured party in actions at law.  42 U.S.C. § 1983.  In a § 1983 false arrest claim, a plaintiff must establish that "(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 306 (D. Conn. 2002)(multiple citations & internal quotations omitted).

Plaintiff bears the burden of putting forth evidence that the underlying action was instituted without probable cause. Pinsky v. Duncan, 79 F.3d 306, 312 (2d Cir. 1996). Probable cause exists so long as "'facts and circumstances within [the officers']  knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. U.S., 338 U.S. 160, 175 (citation & footnote omitted)(emphasis in original), reh. denied, 338 U.S. 839 (1949).  While probable cause requires more than a

11

"mere suspicion" of wrongdoing, its focus is on "probabilities," not "hard certainties." Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007)(multiple citations & internal quotations omitted). "It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." Id. at 157 (citations omitted).

In this case, as plaintiff was aware, the NHPD, along with the New Haven State's Attorney's Office, had concerns about plaintiff's investigation of the Bennett homicide case, which led to an investigation by the IV&E unit.  (Ross Aff't ¶¶ 8-9; Peterson Aff't ¶ 8; Ortiz Aff't ¶ 15; Plaintiff's Depo. at 89-93).  During the course of their investigation, defendants Peterson and Ross discovered plaintiff's requests for funding to pay confidential informants in three other cases in which plaintiff submitted Case Preparation Expenditure forms and Informant Payment Request Forms.  (Ross Aff't ¶¶ 9, 12; Peterson Aff't ¶¶ 9-10, 14; Exhs. I-K, M-X; Exhs. 7-10).  Their investigation revealed payments to confidential informants in 2004, 2006 and 2007, as well as plaintiff's applications for and receipt of funds for confidential informants in these investigations, which named informants in subsequent interviews denied having provided information to, or being paid by, plaintiff.  (Ross Aff't ¶¶ 10-13, 17, 19; Peterson Aff't ¶¶ 15-16, 20, 22; Exhs. I-K, M-X; Exhs. 7-10).  Defendants Peterson and Ross additionally interviewed two retired NHPD detectives who had been involved in the investigations of the Hill Shooting Spree, Field homicide, and Rodriguez homicide; neither of them was aware of plaintiff having utilized a confidential informant in these investigations, and plaintiff's written submissions did not document his use of a CI. (Ross Aff't ¶¶ 10, 20-27, 29; Peterson Aff't ¶¶ 13, 23-29, 31; Exh. L; Exh. 6).

On February 6, 2008, based upon the information known to defendant Ross as a

result of the internal investigation, which investigation included  interviewing twenty people

(Exh. 11, at 2-8),[18] she prepared four affidavits in support of arrest warrants for plaintiff

Willoughby.  (Ross Aff't ¶ 32; Peterson Aff't ¶ 34).  All four arrest warrants were signed by

a Connecticut Superior Court Judge on February 6, 2008.  (Ross Aff't ¶ 33; Peterson Aff't ¶

35; Dkt. #103, Exhs. E-H).

Defendants Peterson and Ross are "not required to explore and eliminate every

theoretically plausible claim of innocence before making an arrest[,] . . . nor [are they]

required to sit as prosecutor, judge and jury in making [their] probable cause

determination."[19] Cerrone v. Brown, 246 F.3d 194, 203 (2d Cir.  2001)(citation & internal

quotations omitted). As a result of the investigation, Peterson and Ross prepared four arrest

applications on various charges including False Statement in the Second Degree, Forgery in

the Second Degree, and Larceny in the Second Degree (Exhs. E-H; Exhs. 12-15), all of which

were approved by New Haven State's Attorney Michael Dearington and then presented to

Superior Court Judge William Holden who signed them and issued the warrants for the arrest

---

[18]In their Internal Affairs investigation report submitted to defendant Ortiz, defendants Ross and Peterson noted that when they met with one of the witnesses at the Hospital of St. Raphael, he stated that he received $500 for information about the person responsible for the Bennett homicide, and that he was paid several times in the past, in $500 increments, by plaintiff. (Exh. 11, at 2).  Thirty minutes after the interview, State Inspector Lawlor met with the witness, who then said that plaintiff paid him $1500 in increments of $500 each for this information regarding the Bennett homicide. (Id.).  Because of the discrepancy in what this witness said in such a short period of time, defendants obtained ex parte orders for plaintiff's cell phone records, which records revealed that the witness called plaintiff immediately after the first interview and may have "been influenced or coached" by plaintiff.  (Id.).

Defendant Dadio informed defendants Peterson and Ross that plaintiff represented that he did use a CI in the Bennett case but that he did not disclose who he or she was, and that the CI number in his report was not the person to whom he paid the money.  (Id. at 2-3).

[19]In his complaint, plaintiff alleges that he denied the accusations of misconduct (Amended Compl. ¶¶ 11-12), whereas at his deposition, he testified that he declined to be interviewed after speaking with his attorney.  (Plaintiff's Depo. at 34, 49, 110-12.  See also Indiv. Cap. Defs. Stmt ¶ 45; Plaintiff's Stmt ¶ A.45; Ross Aff't ¶ 31; Peterson Aff't ¶ 31; Exh. 11, at 9).

of plaintiff.   (Id.).   Probable cause is based on the facts known at the time of the complaint, see Brinegar, 338 U.S. at 175, and a magistrate's finding of probable cause in issuing a warrant creates a presumption that probable cause existed.   Dirienzo v. United States, 690 F. Supp. 1149,1156, n.6 (D. Conn. 1988).

Moreover, a district court should not overturn a judge's determination of probable cause so long as the issuing magistrate had a "substantial basis" for issuing the warrant. Illinois v. Gates, 462 U.S. 213, 236 (citations, internal quotations & footnote omitted), reh. denied, 463 U.S. 127 (1983). The fact that charges were later nolled or even that the accused was later acquitted of the crime does not obviate the validity of the warrant, as "[t]he quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983)(citations omitted).

A plaintiff may rebut a finding of probable cause only by showing fraud, perjury, or misrepresentation or falsification of evidence.   Dirienzo, 690 F. Supp. at 1156, n.6, citing McSorley v. Consol. Rail Corp., 581 F. Supp. 642, 643 (S.D.N.Y. 1984).  However, in this case plaintiff cannot establish as a matter of law that there was no probable cause for his arrest. Plaintiff's brief argues: "In this case, crediting plaintiff's deposition testimony, . . . defendants, either personally or by assisting other defendants, caused the submission of affidavits seeking arrest warrants for the plaintiff which contained material falsehoods[.]" (Dkt. #108, at 5).  At his own deposition, however, plaintiff did not testify as to any intentional submission of material falsehoods to the judge.  Rather, plaintiff testified that defendants Peterson and Ross "secretly recorded" the purported confidential informant to whom plaintiff claims he paid the monies, that this person was under the influence of

14

medication at that time, and defendants "misled him" as to the purpose of the interview. (Plaintiff's Depo. at 26-29, 44-45; see id. at 46-47, 65, 67-68, 70-71). Additionally, when asked why he believes that there was no probable cause, he responded, "The reason I think there was no probable cause, I didn't take any money. I didn't steal the money; I paid the informant the money." (Id. at 35). When asked if it is plaintiff's "theory, or [his] belief, . . . that these applications for arrest warrant were fabricated in order to implicate you to get you out of the running for the chief investigator position?[,]" plaintiff responded, "[n]o, they didn't get me out of the running . . . ." (Id. at 79)(emphasis added).[20]

The facts offered by defendants and supported by affidavits and admissible exhibits support a finding that more than sufficient probable cause existed to arrest and prosecute plaintiff.[21] Accordingly, "[i]f there is no question of material fact that probable cause to arrest and prosecute [plaintiff] existed, summary judgment must enter for the defendants." Bontatibus v. Ayr, 386 F. Supp. 2d 28, 32 (D. Conn. 2005).

B. ABANDONMENT OF DEFENSES

Before addressing defendants' remaining arguments, the Court notes that plaintiff's

---

[20]The law is well-settled that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony. Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572-73 (2d Cir. 1991)(multiple citations omitted); Mack v. U.S., 814 F.2d 120, 124 (2d Cir. 1987)(multiple citations omitted). Here, the circumstances are even less impressive as plaintiff did not submit an sworn affidavit, but rather posited his theory only by way of argument in his brief in opposition to defendants' motions. In his deposition, plaintiff never asserted or pointed to evidence that defendants had committed fraud or perjury, or misrepresented or falsified evidence to obtain the arrest warrant.

[21]Furthermore, the individual claims against defendants Dadio and Ortiz in Counts One, Two and Four must fail as plaintiff cannot establish actual participation by these defendants. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to the award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010)(citations omitted). Neither defendant Dadio nor defendant Ortiz conducted the internal affairs investigation nor did they initiate or procure the arrest and prosecution of plaintiff. (Indiv. Cap. Defs. Stmt ¶¶ 49-51; Dadio Aff't ¶¶ 20-21; Ortiz Aff't ¶ 16).

brief in opposition is limited to what he describes as the "central issue[,]" and "the [only] one which . . . plaintiff . . . address[es]" in his brief, that is, whether defendants "submitted truthful affidavits which established probable cause for . . . plaintiff's arrest." (Dkt. #108, at 1-2). As the Court concluded in Section II.A. <u>supra</u>, plaintiff has not established that his underlying arrest was instituted without probable cause.

The failure to respond to arguments supporting summary judgment constitutes an abandonment of the claim. <u>Carone v. Mascolo</u>, 573 F. Supp. 2d 575, 591 (D. Conn. 2008)(federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way)(internal quotations & citations omitted). As noted, a "party may not rely on his pleadings to avoid judgment against him[,]" and in addition,

> There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.

<u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir.)(multiple citations omitted), <u>cert. denied sub nom. Jones v. Resolution Trust Corp.</u>, 516 U.S. 817 (1995). In this case, in limiting his response to the issue of probable cause, plaintiff has abandoned all other unrelated claims. However, notwithstanding plaintiff's waiver of his defenses, this Court will address each of defendants' remaining arguments in support of summary judgment.

### C. WRONGFUL DETENTION

In Count Two of plaintiff's Amended Complaint, he asserts a claim for wrongful

detention and malicious prosecution under § 1983 against the four individual defendants.[22] (Amended Compl. ¶ 18).   In Count Five, plaintiff asserts a state law claim for false arrest and imprisonment.   (Id. ¶¶ 27-29).   Under Connecticut law, claims of false arrest and wrongful detention are synonymous; both involve the "unlawful restraint by one person of the physical liberty of another."   Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir.)(citations & internal quotations omitted), cert. denied, 552 U.S. 818 ( 2007).   A false arrest claim cannot hold when the challenged arrest was supported by probable cause. Beinhorn v. Saraceno, 23 Conn. App. 487, 491 (App. Ct. 1990), certif. denied, 217 Conn. 809 (1991).  Additionally, claims for false arrest and false imprisonment fail if the plaintiff was arrested pursuant to a facially valid warrant.  Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (App. Ct.), certif. denied, 239 Conn. 946 (1996); Dirienzo, 690 F. Supp. at 1154 ("It is well settled that an arrest made pursuant to a valid warrant issued by a court of competent jurisdiction is privileged and cannot support an action for false arrest.")(citations omitted).

The analysis for the preclusion of the wrongful detention and confinement claim is identical to the analysis of the false arrest claim in Section II.A. supra.  Since the claim for false arrest is precluded, and the claim for false arrest is the same as the claim for wrongful detention and confinement, the claim for wrongful detention and confinement is therefore precluded.

### D. MALICIOUS PROSECUTION

In Count Four, plaintiff asserts a claim of malicious prosecution by all four individual defendants.   (Amended Compl. ¶ 23).[23] To prevail on a § 1983 claim for malicious

---

[22]See note 21 supra.

[23]See note 21 supra.

prosecution, plaintiff must show both a violation of his Fourth Amendment rights and establish elements of malicious prosecution claims under state law. Rotbergs v. Guerrera, No. 3:10 CV 1423 (MRK), 2012 WL 1204729, at *6 (D. Conn. April 11, 2012). To prevail on a malicious prosecution claim under Connecticut law, plaintiff must prove that: "(1) . . . defendant[s] initiated or procured the institution of criminal proceedings against . . . plaintiff; (2) the criminal proceedings have terminated in favor of . . . plaintiff; (3) [defendants] acted without probable cause; and (4) [defendants] acted with malice, primarily for a purpose other than that of bringing an offender to justice." McHale v. W.B.S. Corp., 187 Conn. 444, 447 (1982)(multiple citations omitted). While the first two elements may be satisfied in this case, plaintiff fails at the third as an action for malicious prosecution cannot be maintained where there was probable cause for the charge on which the accused was tried and acquitted. McKenna v. Whipple, 97 Conn. 695, 118 A. 40, 41 (1922); see McSorley, 581 F. Supp. at 643 ("To make out a case of malicious prosecution, plaintiff must prove, inter alia, the absence of probable cause for the criminal proceeding.")(citation omitted). In the context of malicious prosecution, "[p]robable cause is the knowledge of sufficient facts to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." Smith v. Globe  Ford, 39 Conn. Supp. 27, 33 (Super. Ct. 1983)(multiple citations omitted). In such an action, the plaintiff bears the burden of proving "affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding." Zenik v. O'Brien, 137 Conn. 592, 597 (1951)(multiple citations omitted).

Here, the action for malicious prosecution cannot be maintained because, as stated above, there was probable cause for the charge on which the accused was tried and acquitted. Plaintiff's arrest was pursuant to facially valid warrants issued by a court of

18

competent jurisdiction.  (Exhs. E-H; Exhs. 12-15).

The fourth element of malicious prosecution, closely related to the probable cause element, is malice.  Express malice can be implied by a lack of probable cause in initiating prosecution. Zitkov v. Zaleski, 102 Conn. 439, 128 A. 779, 781-82 (1925); see also Zenik, 79 A.2d at 772 (citations omitted).  As discussed in Sections II.A and II.C supra, the circumstances in this case show that defendants had probable cause to initiate prosecution. Since no other evidence of malice is established, and plaintiff has not implied malice from a want of probable cause, plaintiff has failed to establish the requisite malice.  In the absence of a want of probable cause and the absence of the existence of malice, plaintiff's claim for malicious prosecution cannot survive.

E. NEGLIGENT SUPERVISION

In Count Three of plaintiff's Amended Complaint, he alleges that defendant Ortiz refused or failed to instruct, supervise, control and discipline subordinate officers, including defendants Peterson, Dadio and Ross.  (Amended Compl. ¶ 20).  "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort"; a supervisor's liability cannot be vicarious. Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)(citation omitted); Atwood v. Town of Ellington, 468 F. Supp. 2d 340, 353 (D. Conn. 2007).

As the Second Circuit explained in Poe:

[A] supervisor may be found liable for his deliberate indifference to the rights of others, by his failure to act on information indicating unconstitutional acts were occurring, or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury.

282 F.3d at 140 (citations and footnote omitted). However, here, plaintiff has presented no

19

evidence that defendant Ortiz knew or should have known that his subordinates were involved with any violations of constitutional rights.

Plaintiff has not alleged "sufficient facts to raise a triable issue of fact as to whether [defendant Ortiz] knew or should have known that there was a high degree of risk" that his subordinates would engage in a violation or violations of his rights, and then either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that this failure caused a constitutional injury to the plaintiff. Id. at 142 (citations omitted). Therefore, defendant Ortiz is not liable as a supervisor for the constitutional torts of his employees.[24]

### F. NEGLIGENCE

In Count Six of plaintiff's Amended Complaint, he alleges negligence against defendant City of New Haven and defendant Ortiz, in that they violated their duty to train

---

[24]While plaintiff does not have a separate count for conspiracy, he does mention in Count Three that defendants Peterson, Ross and Dadio had conspired to violate his rights under the U.S. Constitution and Connecticut laws.  (Amended Complaint ¶ 20.c.

To establish a claim for § 1983 conspiracy, plaintiff must prove that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of [his] constitutional rights, . . . and (2) those individual(s) were willful participants in joint activity with the State or its agents." Cooney v. Casady, 746 F. Supp. 2d 973, 975 (N.D. Ill. 2010)(citation & internal quotations omitted)(alterations in original with one addition alteration added).  Furthermore, to survive a summary judgment motion, a plaintiff must "proffer specific facts tending to show that a conspiracy existed . . .; conclusory allegations will not suffice." Id. (citation omitted).

In this case, plaintiff 's allegations in his Amended Complaint fail to include the general purpose of the alleged conspiracy, nor does it include the time frame of this alleged conspiracy, included when the purported conspiracy began.  Although plaintiff alleges that the motivation of the defendants for the actions taken against him was to prevent him from being made "Chief Investigator[,]" (Plaintiff's Depo. at 79; see also Tr. 76-82), this allegation is factually without merit as defendants Ross and Peterson were not in the Investigative Services Unit, they were in the Internal Affairs unit, and thus they would not have been under plaintiff's command even if he was to assume that position.  (Official Cap. Defs. Stmt ¶¶ 59-61).  Therefore, to the extent plaintiff has asserted any conspiracy claim in this lawsuit, such claim falls short of the standard laid out in Cooney.

defendants Peterson, Ross and Dadio according to the standard of care established by, <u>inter alia</u>, the State of Connecticut Municipal Police Training Council and the City of New Haven Department of Police Services Police Academy, in "conducting an investigation, establishing probable cause and preparing written reports and affidavits under oath . . . ." (Amended Complaint ¶ 32).   "[I]n Connecticut, the operation of a police department is a discretionary government function [and] [t]his includes the training and supervision of police officers." <u>Odom v. Matteo</u>, 3:08 CV1569 (VLB), 2010 WL 466000, at *4 (D. Conn. Feb. 3, 2010), <u>citing Hughes v. Hartford</u>, 96 F. Supp. 2d 114, 119 (D. Conn. 2000)("extensive and near-unanimous precedent in Connecticut clearly demonstrates that the acts or omissions alleged in plaintiff's complaint – the failure to screen, hire, train, supervise, control and discipline – are discretionary acts as a matter of law."); <u>Coletosh v. City of Hartford</u>, No. CV 970573462S, 1999 WL 259656, at *1 (Conn. Super. Ct. Apr. 13, 1999)(in a case alleging excessive force by Hartford police officers, "instructing, supervising, controlling and disciplining police officers were found to be discretionary acts as a matter of law."); <u>Cook v. City of Hartford</u>, No. CV 89-0362482, 1992 WL 220102, at *2 (Conn. Super. Ct. Aug. 31, 1992)("The act of training and supervising police officers is clearly a discretionary governmental function.  Consideration of whom to hire, how to train such people, and how to supervise police officers on the job are decisions requiring the use of judgment and discretion. A municipality cannot employ a standard list of actions which must be taken in utilizing its police department."); <u>see also Gordon v. Bridgeport Housing Auth.</u>, 208 Conn. 161, 179-80 (1988)("[I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . .")(citations & internal quotations omitted).   Since the training and

supervision of defendant police officers were discretionary functions, the City would be entitled to governmental immunity unless it was apparent that the City's failure to supervise and train has subjected an identifiable person to imminent harm.  <u>Shore v. Town of Stonington</u>, 187 Conn. 147, 153 (1982).  However, other than his conclusory allegation, plaintiff has made no factual allegations that it was apparent to defendant City of New Haven or defendant Ortiz there was a need for training of the defendant officers.

G. DEFAMATION

Lastly, plaintiff alleges defamation in Count Seven.[25]  Even assuming <u>arguendo</u> that plaintiff can prove that the statements themselves were defamatory,[26] the statements at issue are governed by an absolute privilege.  If "communications are uttered or published in the course of judicial [or quasi-judicial] proceedings, even if they are published falsely and maliciously, they nevertheless are absolutely privileged provided they are pertinent to the subject of the controversy." <u>Hopkins v. O'Connor</u>, 282 Conn. 821, 838 (2007)(citation omitted); <u>see Wolinksy v. Std. Oil of Conn., Inc.</u>, No. 3:08 CV 832(MRK), 2008 WL 3984593, at *1 (D. Conn. Aug. 25, 2008). "[A]bsolute immunity furthers the public policy of encouraging participation and candor in judicial . . . proceedings." <u>Gallo v. Barile</u>, 284 Conn.

---

[25]The Amended Complaint, as presently drafted, fails to state what specific defamatory statements were made, to whom, and how these statements were made.  (Amended Compl. ¶¶ 36-39).   As such, it fails to establish a <u>prima facie</u> case of defamation.  To establish a prima facie case of defamation, plaintiff must demonstrate that: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." <u>Gambardella v. Apple Health Care, Inc.</u>, 291 Conn. 620, 627-28 (2009)(citation omitted).  Additionally, "a complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom . . . ." <u>Chertkova v. Conn. Gen. Life Ins. Co.</u>,  No. CV 980486346S, 2002 WL 1902988, at *4 (Conn. Super. Ct. July 12, 2002)(citations & internal quotations omitted), <u>aff'd mem.</u>, <u>Chertokova v. Conn. Gen. Life Ins.</u>, 76 Conn. App. 907 (App. Ct. 2003).

[26]<u>See</u> note 25 <u>supra</u>.

22

459, 466 (2008)(citation omitted)(alteration in original).

In determining whether a statement is made in the course of a judicial proceeding, "it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." Hopkins, 282 Conn. at 839 (citations & internal quotations omitted).  "[T]he court must decide as a matter of law whether the alleged defamatory statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding, so as to qualify for the privilege." Id. The test for relevancy is "generous, and 'judicial proceeding' has been defined liberally to encompass much more than civil litigation or criminal trials." Id. (citation omitted). However, "whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests[,]" and "[i]n weighing those considerations, [the court is] mindful of that fact that absolute immunity is strong medicine." Gallo, 284 Conn. at 471 (citations, internal quotations & alterations omitted).

Here, the statements by defendants were made in the course of an extensive investigation and development of a case which culminated in arrest warrant applications that were issued by a court of competent jurisdiction.  The preparation and submission of an arrest warrant application is an integral part of the criminal prosecution process. See id. at 474-75.   Moreover, "statements made in the course of an internal affairs investigation against a . . . police officer are sheltered by the common-law doctrine of absolute immunity from actions of defamation." Craig v. Stafford Const., Inc., 78 Conn. App. 549, 560-61 (App. Ct. 2003)(footnote omitted), aff'd, 271 Conn. 78 (2004).  Accordingly, even if plaintiff could have established a claim for defamation, defendants enjoy absolute immunity for the statements made in the course of the quasi-judicial and judicial proceedings.

23

I. QUALIFIED IMMUNITY

In light of the conclusions reached above, the Court need not address this issue of qualified immunity.

III. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment filed by defendants in their official capacities and the Motion for Summary Judgment filed in their individual capacities (Dkts. ##102 and 105) are granted.

The Clerk's Office is directed to close this file.

Dated this 27th day of August, 2012, at New Haven, Connecticut.


  /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge